UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DOUGLAS EDMONSTON,<br><br>                Plaintiff,<br>v.<br><br>DR. GANNON and DR. ALBA,<br><br>                Defendants. | Case No. 10-CV-701-JPS<br><br><br>ORDER |

The *pro se* plaintiff is proceeding *in forma pauperis* under 42 U.S.C. § 1983, on a claim that the defendants failed to provide necessary medical care for his separated shoulder. Now before the court is the defendants' motion for summary judgment. The plaintiff was given additional time to respond after his motion for counsel was denied, and warned of the consequences for failure to file a response, but he has not filed any response. Accordingly, the court will consider the merits of defendants' motion without the benefit of any response from the plaintiff.

1.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991).

2.   Factual Background

The plaintiff, Douglas Edmonston, is an inmate of the Wisconsin Department of Corrections, who has resided at the Wisconsin Resource Center (WRC) since December 3, 2009. Defendant Carlo Gannon is employed as a full-time physician at WRC, and defendant Jose Alba is employed as a full-time psychiatrist at WRC. Both defendants are licensed physicians.

On April 24, 2010, the plaintiff was seen by nursing staff at WRC and complained of left shoulder pain, reporting that he was having increased pain because he may have slept on it wrong. He was given Ibuprofen on an as-needed basis for the pain and referred to the physician. Dr. Gannon

attempted to see the plaintiff on April 28, 2010, but the plaintiff had an off-site appointment and was unavailable.

Dr. Gannon saw the plaintiff on May 12, 2010. During that appointment, the plaintiff claimed that he had injured his left shoulder in 2008 and been recommended for surgery. Dr. Gannon ordered the 2008 emergency room records as well as current x-rays and an extra pillow for comfort. The x-rays were completed on May 27, 2010, and showed a Grade III chronic acromioclavicular separation of the left shoulder.

On May 28, 2010, nursing staff advised the on-call physician, Dr. Alba, of the x-ray results and he ordered an arm brace to keep the plaintiff's shoulder/arm immobilized. Dr. Alba examined the plaintiff the following day and determined that the chronic shoulder complaint dating back to a pre-incarceration accident in 2008 was not of an emergency nature, and that the limitation of movement had not worsened. Therefore, he provided Naproxen for pain and referred the plaintiff to his regular WRC physician, Dr. Gannon.

On June 1, 2010, Dr. Gannon signed a request for the plaintiff to receive service off-site, and nursing staff made an appointment for the plaintiff to see an orthopedic surgeon, Roy Buck, on September 8, 2010. Off-site provider appointments typically depend on the availability of time slots dictated by the provider's patient workload. On August 23, 2010, Dr. Gannon saw the plaintiff, noted a good range of motion, and placed him on NSAIDS for pain.

Dr. Buck examined the plaintiff on September 8, 2010, and wrote a consultation report with options of continuing as is with the shoulder or undergoing surgical reconstruction. Dr. Gannon is a physician whose specialty is family practice, so he relied on the first recommendation of the

orthopedic specialist/surgeon to continue as is with the plaintiff's shoulder. Dr. Gannon intended to continue monitoring the plaintiff's shoulder and to provide him with appropriate pain management for that chronic medical condition. Dr. Gannon would have ordered surgical intervention if that had been the sole or preferred recommendation.

On September 8, 2010, the plaintiff requested a second mattress for shoulder pain, which was ordered by a physician on September 13, 2010. On October 8, 2010, the plaintiff complained of shoulder pain. Nursing staff responded by advising the plaintiff that he should be taking his medication twice a day to be within therapeutic levels for pain management. On November 23, 2010, the plaintiff indicated that Naproxen was not working. He was seen by nursing staff the following day and advised that he was still taking the Naproxen intermittently, and that he should take it regularly for two weeks and contact the Health Services Unit if not effective. On December 6, 2010, the plaintiff indicated that the Naproxen was still not effective. He was seen by nursing staff the following day, who observed a good range of motion and referred him to a physician.

Dr. Loyda Loria examined the plaintiff on December 10, 2010, and switched him from Tramadol to Tylenol #3 for pain management. On April 19, 2011, Dr. Loria called Dr. Buck to further discuss treatment, and Dr. Buck recommended continuing with the conservative treatment. A May 21, 2011 nursing progress note indicated that the plaintiff expressed that his current meds were helpful in managing his shoulder pain.

3. Discussion

The Eighth Amendment protects prisoners from "a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577

F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Id.* The defendants do not dispute that the plaintiff's Grade III chronic acromioclavicular separation of his left shoulder constituted a serious medical need. Therefore, the "focus is on whether they acted with deliberate indifference in their response." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Deliberate indifference is a subjective standard that is met when a prison official "knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Id.* at 751. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id.* at 753.

The defendants maintain that they responded appropriately to the plaintiff's shoulder pain complaints by examining the plaintiff, arranging for comfort measures, referring him to an outside orthopedic surgeon, and following a conservative course of treatment approved by that specialist. The plaintiff has offered nothing in response. Nothing in this record suggests that the plaintiff's longstanding shoulder condition, which predates his incarceration, has been mistreated by prison officials. Nor can it be reasonably inferred, based upon this record, that the plaintiff would have suffered less pain if he had been x-rayed or examined sooner by the orthopedic specialist, who affirmed that simply continuing "as-is" with the shoulder was an appropriate course of treatment. Before the x-rays were completed and orthopedic surgeon examined him, the plaintiff was already receiving basic comfort measures in the form of an optional sling, and extra pillow, along with medication for pain relief. The specialist approved the

conservative treatment that the plaintiff was already receiving. It appears from the medical records that these measures did not fully relieve the plaintiff's pain at all times. But those records also indicate that the plaintiff did not fully comply with his medication regimen, and that medical staff revised the pain medication several times before finding a regimen that provided substantial relief.

On this record, it cannot be inferred that the plaintiff received treatment that was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). While there were delays in obtaining x-rays and an appointment with an orthopedic specialist, after the plaintiff reported increased pain from his chronic shoulder problems, nothing in this record suggests that these delays prolonged the plaintiff's pain. After reviewing the x-rays and examining the plaintiff, the specialist affirmed the conservative treatment that was already being provided. Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (Docket #24) be and the same is hereby GRANTED.

The Clerk of Court is directed to enter judgment dismissing the plaintiff's claims against the defendants.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge